**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

|  |  |
|---|---|
| GREENTHREAD, LLC ) | **PUBLIC VERSION** |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 6:22-cv-105-ADA |
| v. ) | |
| ) | |
| INTEL CORPORATION, DELL INC., AND ) | **FILED UNDER SEAL** |
| DELL TECHNOLOGIES INC. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' SEALED MOTION TO SEVER PLAINTIFF'S CLAIMS AGAINST
INTEL, TRANSFER VENUE OF THOSE CLAIMS TO OREGON, AND STAY CLAIMS
AGAINST DELL BASED ON ACCUSED INTEL PRODUCTS**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................1

II. FACTUAL BACKGROUND ..................................................................1

    A. Greenthread's Infringement Allegations.......................................1

    B. Most of Intel's Witnesses and Evidence Are Located in or Near Oregon.............................................................................................2

    C. Plaintiff's Witnesses and Evidence Are Not Located in This District.............................................................................................3

III. ARGUMENT ...........................................................................................4

    A. Greenthread's Claims Against Intel Should Be Severed From Its Claims Against Dell.........................................................................4

        1. Greenthread's Claims Against Dell Based on the Accused Intel Products Are Peripheral to Its Claims Against Intel.............................................................................5

        2. The Resolution of Greenthread's Claims Against Intel Will Dispose of Greenthread's Claims Against Dell Based on the Accused Intel Products.........................................6

        3. Transfer Is Warranted Under 28 U.S.C. § 1404(a). ..................7

    B. Greenthread's Claims Against Dell Based on the Accused Intel Products Should Be Stayed Pending the Resolution of Its Claims Against Intel. ........................................................................7

    C. A Transfer of Greenthread's Suit Against Intel to Oregon Is Warranted.........................................................................................9

        1. Greenthread Could Have Filed Suit Against Intel in Oregon.................................................................................9

        2. The Convenience of the Witnesses Favors a Transfer to Oregon...............................................................................10

        3. The Relevant Sources of Proof Also Favor a Transfer to Oregon...............................................................................12

        4. The Local Interests Likewise Favor a Transfer to Oregon...............................................................................13

        5. The Remaining Factors Are Neutral. ......................................14

**TABLE OF CONTENTS (CONT'D)**

**Page**

D.  If Greenthread's Claims Against Dell Are Not Severed, an
    Intra-District Transfer to the Austin Division Is Warranted. ..............................15

IV.  CONCLUSION ...............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10Tales, Inc., v. TikTok Inc.*,
No. 6:20-CV-00810-ADA, 2021 WL 2043978 (W.D. Tex. May 21, 2021) .........................12

*Am. Vehicular Sciences, LLC v. Toyota Motor Corp.*,
No. 6:12-cv-404-MSH-JDL, 2014 WL 3385149 (E.D. Tex. July 10, 2014)...........................6

*Anderson v. Red River Waterway Comm'n*,
231 F.3d 211 (5th Cir. 2000) .................................................................................................4

*In re Apple Inc.*,
818 F. App'x 1001 (Fed. Cir. 2020) .....................................................................................10

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020)........................................................................................9, 12

*Brain Life, LLC v. Elekta Inc.*,
746 F.3d 1045 (Fed. Cir. 2014)..............................................................................................7

*Collaborative Agreements, LLC v. Adobe Sys. Inc.*,
No. 1-14-CV-356-LY, 2015 WL 10818739 (W.D. Tex. Aug. 21, 2015)...................... *passim*

*Crossroads Sys., Inc. v. Dot Hill Sys. Corp.*,
No. A-13-CA-1025-SS, 2015 WL 3773014 (W.D. Tex. June 16, 2015) .................................8

*Datascape, Ltd. v. Dell Techs. Inc.*,
No. 6:19-CV-00129-ADA, 2019 WL 4254069 (W.D. Tex. June 7, 2019)
(Albright, J.)...................................................................................................................13, 16

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)..........................................................................10, 12, 13, 14

*In re Google LLC*,
No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ..........................................11, 14

*In re Google LLC*,
No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ................................................13

*Greenthread, LLC v. Samsung Electronics Co., Ltd. et al.*,
Case No. 2:19-cv-00147, Dkt. 1 (E.D. Tex.) ........................................................................14

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009)............................................................................................13

*Impression Prod., Inc. v. Lexmark Int'l, Inc.*,
    137 S. Ct. 1523 (2017) ..................................................................................................7

*Int'l Shoe Co. v. State of Wash., Off of Unemployment Comp. & Placement*,
    326 U.S. 310 (1945) ......................................................................................................9

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ......................................................................................................8

*LoganTree LP v. Apple Inc.*,
    No. 6:21-CV-00397-ADA, 2022 WL 1491097 (W.D. Tex. May 11, 2022)
    (Albright, J.) ...............................................................................................................13

*MasterObjects, Inc. v. Facebook, Inc.*,
    No. 6-20-CV-00087-ADA, 2021 WL 7449852 (W.D. Tex. July 13, 2021)
    (Albright, J.) ...............................................................................................................12

*Milliken v. Meyer*,
    311 U.S. 457 (1940) ......................................................................................................9

*In re Nintendo Co., Ltd.*,
    544 F. App'x 934 (Fed. Cir. 2013) ...............................................................................6

*In re Nintendo of America, Inc.*,
    756 F.3d 1363 (Fed. Cir. 2014) .......................................................................4, 5, 8, 14

*In re Pandora Media, LLC*,
    No. 2021-172, 2021 WL 4772805 (Fed. Cir. Oct. 13, 2021) .....................................10

*In re Radmax, Ltd.*,
    720 F.3d 285 (5th Cir. 2013) ................................................................................13, 15

*Richmond v. Lumisol Elec. Ltd.*,
    No. CIV.A. 13–1944 MLC, 2014 WL 1716447 (D.N.J. Apr. 30, 2014) .....................5

*Rothschild Mobile Imaging Innovations, LLC v. Mitek Sys., Inc.*,
    No. CV 14-1142-GMS, 2015 WL 4624164 (D. Del. July 31, 2015) ....................5, 6, 8

*Scramoge Tech. Ltd. v. Apple Inc.*,
    No. 6:21-CV-00579-ADA, 2022 WL 1667561 (W.D. Tex. May 25, 2022)
    (Albright, J.) ...............................................................................................................14

*Shifferaw v. Emson USA*,
    No. 2:09-cv-54-TJW-CE, 2010 WL 1064380 (E.D. Tex. Mar. 18, 2010) ...................6

*VLSI Tech. LLC v. Intel Corp.*,
    No. 6:19-CV-00254-ADA, 2019 WL 8013949 (W.D. Tex. Oct. 7, 2019) ..................15

*VOIP-PAL.COM, Inc. v. Google LLC,*
    No. 6:21-CV-00667-ADA, 2022 WL 2068254 (W.D. Tex. June 8, 2022)
    (Albright, J.) ............................................................................................................... 10

*In re Volkswagen AG,*
    371 F.3d 201 (5th Cir. 2004) ............................................................................... 9, 11

*WSOU Invs. LLC v. Arista Networks, Inc.,*
    No. W-20-CV-01083-ADA, 2021 WL 6015526 (W.D. Tex. Nov. 5, 2021)
    (Albright, J.) ............................................................................................................... 11

**Statutes**

28 U.S.C. § 1400(b) ............................................................................................................ 10

28 U.S.C. § 1404(a) ................................................................................................ *passim*

**Rules**

FED. R. CIV. P. 21 ................................................................................................................ 4

Or. R. Civ. P. 4(A)(4) ......................................................................................................... 9

# I.    INTRODUCTION

Plaintiff Greenthread, LLC ("Greenthread") has sued Intel Corporation ("Intel") and Intel's customer, Dell Inc./Dell Technologies Inc. ("Dell"), for alleged infringement of patents directed to certain manufacturing steps for semiconductor devices.  Certain of Greenthread's claims against Dell are based on Dell's incorporation of accused Intel processors and flash memory products (the "Accused Intel Products") into Dell end products.  Because Intel is responsible for designing, developing, and manufacturing the Accused Intel Products, Greenthread's claims against Dell based on those products are merely peripheral to, and will rise or fall with, its claims against Intel. Defendants therefore request that the Court sever Greenthread's claims against Intel from its claims against Dell and stay the claims against Dell based on the Accused Intel Products, pending the resolution of Greenthread's claims against Intel.

Any resolution of Greenthread's claims against Intel will require testimony from Intel witnesses located in the District of Oregon who have knowledge of the relevant manufacturing steps for the accused Intel processors.  Similarly, Intel engineers with knowledge of the relevant manufacturing steps of the accused Intel flash memory products are located in Northern California near Oregon.  In contrast, Intel is unaware of any Intel employees with knowledge relevant to Greenthread's claims who are located in this District—and Greenthread, which is a patent assertion entity apparently based in Dallas, has no known connection to this District.  Intel therefore also moves under 28 U.S.C. § 1404(a) for this case to be transferred to Oregon—or, in the alternative, to this District's Austin Division—for the convenience of the witnesses.

# II.    FACTUAL BACKGROUND

## A.    Greenthread's Infringement Allegations

Greenthread's Complaint asserts the patents-in-suit against Intel "semiconductor products that practice the claimed inventions, including Intel Accused CPUs and Intel Accused Flash

Memory Products." (Dkt. 38, Am. Comp. ¶ 49.) Greenthread accuses Intel of infringement based on certain manufacturing steps undertaken for the Accused Intel Products—specifically, "process steps for creating regions with graded dopant concentrations." (*Id*. ¶ 52.) The accused steps are part of Intel's highly complex and proprietary semiconductor manufacturing process. (Ex. 1, Mistry Decl. ¶¶ 3–5.) No Intel customers are involved in determining the Accused Intel Products' dopant concentrations or in performing the doping process. (*Id*. ¶ 5; Ex. 2, Oliphant Decl. ¶ 6.)

Greenthread accuses Dell of infringing the patents-in-suit by "making, using, offering to sell, selling within, and/or importing into the United States Dell-Intel Accused Products." (Dkt. 38, Am. Comp. ¶ 63.) Greenthread defines "Dell-Intel Accused Products" as "Dell Products incorporating or comprising Intel Accused Products," including "Intel Accused CPUs and Intel Accused Flash Memory Products." (*Id.* ¶¶ 61–62; *see also* Dkt. 38-8, Comp. Ex. 8 at 7–8.) Greenthread also accuses Dell of infringement based on separate flash memory products sold by Micron and Western Digital and image sensors sold by Sony. (Dkt. 38, Am. Comp. ¶¶ 64–81).

## B. Most of Intel's Witnesses and Evidence Are Located in or Near Oregon

Intel's primary semiconductor design, development, and production facilities are located in Hillsboro, Oregon, which is over 1,600 miles from Waco, Texas. (Ex. 6 at 2; Ex. 7) Oregon is the site of Intel's largest concentration of talent and facilities in the world, with over ███ full- and part-time permanent Intel employees. (Ex. 1, Mistry Decl. ¶ 6; Ex. 3, Veysseire Decl. ¶¶ 7–8.) The manufacturing process technology for the accused Intel processors was first designed and developed in Oregon. (Ex. 1, Mistry Decl. ¶ 7.) The accused processors are still manufactured there, and the same Oregon-developed processes have been implemented at Intel's fabs in New Mexico, Arizona, Israel, and Ireland. (*Id*.) Potential Intel trial witnesses who are involved with and knowledgeable about these processors' manufacturing process are located in Oregon. (*Id*. ¶¶ 7–8.) For example, Kaizad Mistry, Intel's Corporate Vice President, Strategy and Technology for

Business Enablement as part of Technology Development, works at Intel's campus in Hillsboro, Oregon, where he oversaw design and development for the manufacturing process technologies for the accused processors. (*Id.* ¶ 7.) Other potential Oregon-based witnesses include Ray Cotner, Leonard Pipes, and Curtis Tsai, who are all responsible for important aspects of the design and development of Intel's manufacturing process technology. (*Id.* ¶ 8.)

Intel witnesses having potentially relevant information regarding the accused manufacturing steps for Intel's accused flash memory products are located in Northern California and in China. (Ex. 4, Parat Decl. ¶ 9.) The design team for these products is located in Folsom, California, and that team is supported by a smaller group of Intel engineers and technologists located in Santa Clara, California. (*Id.*) Intel is unaware of any employees in Texas with knowledge relevant to Greenthread's claims against the accused flash memory products. (*Id.*)

Intel does not own, rent, or operate any facilities in this District's Waco Division, and no Intel employees work in any counties in this Division. (Ex. 3, Veysseire Decl. ¶¶ 4–6.) While Intel does have facilities in the Austin Division, Intel is unaware of any employees located there who have any particular knowledge, job responsibilities, or documents related to the accused manufacturing process technology for Intel's processors and flash memory products. (Ex. 1, Mistry Decl. ¶ 12; Ex. 4, Parat Decl. ¶ 9; Ex. 5, Boatright Decl. ¶¶ 4–5.) Intel also is unaware of any documents relevant to the issues in this case that are stored on any servers located in this District. (Ex. 1, Mistry Decl. ¶ 9; Ex. 4, Parat Decl. ¶ 10.)

### C. Plaintiff's Witnesses and Evidence Are Not Located in This District.

Greenthread has identified its principal place of business as being located in Dallas, Texas, in the Northern District of Texas. (Dkt. 38, Am. Comp. ¶ 3.) The patents-in-suit share the same inventor, G. R. Mohan Rao, whose location, as listed on the face of the patents, is McKinney, Texas, which is north of Dallas. (*See*, *e.g.*, Dkt. 38-1, U.S. Pat. No. 8,421,195.) Dr. Rao's

LinkedIn profile lists his current location as Richardson, Texas, also north of Dallas. (Ex. 8.) Neither Greenthread nor Dr. Rao has any known or disclosed connection to this District.

## III.    ARGUMENT

### A.    Greenthread's Claims Against Intel Should Be Severed From Its Claims Against Dell.

This Court should sever Greenthread's claims against Intel from its claims against Dell, including its claims against Dell related to non-Intel components. The Court should also stay the claims against Dell that are related to the Accused Intel Products, pending the outcome of Greenthread's claims against Intel. The Court has "broad discretion to sever" any claim against a party. *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000); *see also* FED. R. CIV. P. 21. When a patentee alleges infringement against both a manufacturer and its customer, the court may, in the interest of judicial economy, sever and stay the action against the customer until the case against the manufacturer is resolved. *See In re Nintendo of America, Inc.*, 756 F.3d 1363, 1365−66 (Fed. Cir. 2014). That approach is particularly appropriate where, as here, resolving the claims against the manufacturer will necessarily dispose of claims against the customer. *See id.* at 1365.

To determine whether to sever claims when a plaintiff sues both a supplier and its customer for infringement, the Court should consider whether: "(1) the claim to be preserved is peripheral to the remaining claims; (2) the adjudication of the remaining claims is potentially dispositive of the severed claim; and (3) the transfer of the remaining claims is warranted under 28 U.S.C. § 1404(a)." *Collaborative Agreements, LLC v. Adobe Sys. Inc.*, No. 1-14-CV-356-LY, 2015 WL 10818739, at *2 (W.D. Tex. Aug. 21, 2015). All three factors are satisfied here.

**1.    Greenthread's Claims Against Dell Based on the Accused Intel Products Are Peripheral to Its Claims Against Intel.**

An infringement claim against a customer is peripheral to a claim against a manufacturer if the customer claim is based on technology designed and supplied by the manufacturer. *See Collaborative Agreements*, 2015 WL 10818739, at *2. That is the case here, where Intel designs and supplies the Accused Intel Products. (Ex. 1, Mistry Decl. ¶ 5; Ex. 2, Oliphant Decl. ¶ 6.) As Intel's customer, Dell is "not involved and would not have substantive knowledge about the [alleged] patent infringement, which would begin at the design and manufacture stages" of the Accused Intel Products. *Rothschild Mobile Imaging Innovations, LLC v. Mitek Sys., Inc.*, No. CV 14-1142-GMS, 2015 WL 4624164, at *3 (D. Del. July 31, 2015) (quoting *Richmond v. Lumisol Elec. Ltd.*, No. CIV.A. 13–1944 MLC, 2014 WL 1716447, at *4 (D.N.J. Apr. 30, 2014)).

The Federal Circuit's analysis in *Nintendo* is illustrative. In that case, the plaintiff brought suit in the Eastern District of Texas against Nintendo and eleven retailers of the Nintendo DS system. *See Nintendo*, 756 F.3d at 1363. The Federal Circuit applied the reasoning of the customer-suit exception to reverse the district court's denial of a motion to sever the infringement claims against Nintendo from the retailer claims. *See id.* at 1365 ("While the circumstances of this case differ from those of the customer-suit exception . . . the same general principles govern in that Nintendo is the true defendant.") (internal citations omitted). The Court in *Collaborative Agreements* likewise held that infringement claims against a customer were peripheral to claims against a manufacturer where the customer had no role in designing or developing the accused functionality. *See* 2015 WL 10818739 at *2 (determining claims against Adobe's customers were "peripheral to the central issue in the case" because the alleged infringement centered on the operation of Adobe's EchoSign software and how Adobe provided it to customers). Based on that

finding, the Court severed the plaintiff's claims against the manufacturer and transferred them to a different forum, while staying the plaintiff's suit against the customers.  *See id.* at *3, *5.[1]

Like the manufacturers in those cases, Intel is "the true defendant" in this dispute with respect to Greenthread's claims based on the Accused Intel Products.  Dell had no involvement whatsoever in the design, development, or manufacture of the Accused Intel Products, which it incorporates into its own products without modification.  (Ex. 2, Oliphant Decl. ¶ 6.)  As a result, Dell has "very little to offer in the way of evidence regarding the substantive aspects of the infringement case" and "can add little to nothing regarding how the technology underlying the accused products works."  *In re Nintendo Co., Ltd.*, 544 F. App'x 934, 941 (Fed. Cir. 2013).  ███

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████

2.    **The Resolution of Greenthread's Claims Against Intel Will Dispose of Greenthread's Claims Against Dell Based on the Accused Intel Products.**

The outcome of Greenthread's suit against Intel will dispose of its claims against Dell based on the Accused Intel Products.  If, as Intel expects, it is determined that the patents-in-suit

---

[1] *See also, e.g.*, *Am. Vehicular Sciences, LLC v. Toyota Motor Corp.*, No. 6:12-cv-404-MSH-JDL, 2014 WL 3385149, at *2 (E.D. Tex. July 10, 2014) (finding claims against downstream distributor were peripheral because "[a]s a distributor, [it] has no part in the manufacture, research, development, or engineering of vehicles, nor the installation of any items that alter the accused structures or systems"); *Shifferaw v. Emson USA*, No. 2:09-cv-54-TJW-CE, 2010 WL 1064380, at *1 (E.D. Tex. Mar. 18, 2010) (finding claims against retailers were peripheral, absent evidence "that the Retailer Defendants had any role in the design or manufacture of the accused products"); *Rothschild*, 2015 WL 4624164, at *3 (finding claims against banks using accused software were peripheral to claims against software company, because software was purchased and incorporated into banks' mobile applications without modification).

are invalid and/or not infringed by the Accused Intel Products, the doctrine of issue preclusion will bar Greenthread's related claims against Dell. *See, e.g.*, *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1057 (Fed. Cir. 2014) (noting when an accused supplier "prevails in demonstrating noninfringement, the specific accused device(s) acquires the 'status' of a noninfringing device" with respect to the asserted patent claims); *Collaborative Agreements*, 2015 WL 10818739, at *2 ("[T]he infringement case against all [customer] Defendants will rise and fall with the question of whether Adobe's software is found to infringe the claims of the patent.").

Moreover, in the unlikely event Greenthread prevails against Intel, its related claims against Dell will be barred by patent exhaustion. Since Greenthread cannot obtain two recoveries for sales of the same components, any recovery against Intel will bar a recovery against Dell for products incorporating Accused Intel Products. *See Impression Prod., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523, 1531 (2017); *Collaborative Agreements*, 2015 WL 10818739, at *2 ("The court agrees with Adobe's characterization that 'a resolution of the case against Adobe (either way) will resolve the cases against the customers because, either the system will be adjudged to not infringe, or it will be found to infringe and whatever royalty is due from Adobe will exhaust [plaintiff's] remedies as to the [Customer Defendants'] use of that system.'") (alterations in original).

### 3.    Transfer Is Warranted Under 28 U.S.C. § 1404(a).

As discussed in Section III.C below, the 28 U.S.C. § 1404(a) factors favor transferring Greenthread's case against Intel to the District of Oregon. Accordingly, this factor also supports severing Greenthread's claims against Intel from its claims against Dell.

### B.    Greenthread's Claims Against Dell Based on the Accused Intel Products Should Be Stayed Pending the Resolution of Its Claims Against Intel.

In addition to severing Greenthread's claims against Intel from its claims against Dell, the Court should stay Greenthread's claims against Dell that are related to the Accused Intel Products,

pending the resolution of the claims against Intel. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket."); *Nintendo*, 756 F.3d at 1366 (staying claims against Nintendo customers while severing and transferring claims against Nintendo). In deciding to issue a stay, courts typically consider: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Crossroads Sys., Inc. v. Dot Hill Sys. Corp.*, No. A-13-CA-1025-SS, 2015 WL 3773014, at *2 (W.D. Tex. June 16, 2015); *see also Rothschild*, 2015 WL 4624164, at *3 n.5 (applying these factors to stay claims against customer after severing and transferring manufacturer claims).

All three stay factors favor staying Greenthread's claims against Dell related to the Accused Intel Products. ***First,*** a stay is virtually certain to simplify the issues, because the claims in question, which all are based on patent claims directed to a "semiconductor device" that Greenthread alleges is present inside the Accused Intel Products, are based solely on Dell's incorporation of those products into Dell products. Accordingly, resolving the question of Intel's alleged liability will necessarily also dispose of the question of Dell's liability with regard to those products. ***Second,*** for the same reason, Greenthread will not be unduly prejudiced or incur any tactical disadvantage by litigating its claims based on the Intel Accused Products against Intel before they are litigated against Dell. However, if Intel were forced to undergo a trial together with unrelated products from Dell's other accused suppliers, Intel may be unduly prejudiced. ***Third,*** discovery has not begun in this case, and although the Scheduling Order lists jury selection and trial as beginning December 11, 2023, the Order also indicates this date will be set "at the conclusion of the *Markman* hearing" on December 12, 2022. (Dkt. 43.) Staying Greenthread's

claims against Dell related to the Accused Intel Products therefore is amply warranted to avoid wasting party and judicial resources by needlessly litigating claims that will be resolved through Greenthread's action against Intel. *See Collaborative Agreements*, 2015 WL 10818739, at *3.

    **C.    A Transfer of Greenthread's Suit Against Intel to Oregon Is Warranted.**

    "For the convenience of parties and witnesses, in the interest of justice," this Court may transfer a case to any district where the case could have been brought. 28 U.S.C. § 1404(a). When evaluating a request for transfer, courts in the Fifth Circuit weigh four private interest factors: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020) (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)). Courts in this Circuit also consider four public interest factors: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or of] the application of foreign law." *Id.* (quoting *Volkswagen*, 371 F.3d at 203).

    **1.    Greenthread Could Have Filed Suit Against Intel in Oregon.**

    Greenthread unquestionably could have brought its claims against Intel in Oregon. Subject matter jurisdiction is proper there because Greenthread alleges patent infringement, and personal jurisdiction is proper because Intel "[i]s engaged in substantial and not isolated activities within th[at] state" and "ha[s] certain minimum contacts with [Oregon] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Or. R. Civ. P. 4(A)(4); *Int'l Shoe Co. v. State of Wash., Off of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Venue in Oregon would

likewise be proper based on Intel's Hillsboro facilities, which are unquestionably "regular and established place[s] of business" for Intel.  28 U.S.C. § 1400(b).

### 2. The Convenience of the Witnesses Favors a Transfer to Oregon.

The convenience of witnesses is "probably the single most important factor in [the] transfer analysis."  *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009); *see also In re Apple Inc.*, 818 F. App'x 1001, 1003 (Fed. Cir. 2020) (same).  "This factor appropriately considers the cost of attendance of all willing witnesses, including both party and non-party witnesses."  *VOIP-PAL.COM, Inc. v. Google LLC*, No. 6:21-CV-00667-ADA, 2022 WL 2068254, at *4 (W.D. Tex. June 8, 2022) (Albright, J.) (citing *In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at *2–3 (Fed. Cir. Oct. 13, 2021)).

As explained above, Greenthread's infringement accusations are directed against certain fabrication steps undertaken during the manufacturing of the Accused Intel Products.  (*See* Dkt. 38, Am. Comp. ¶ 52.)  Intel personnel located in Oregon have relevant knowledge regarding the accused manufacturing steps for the accused Intel processors.  These potential witnesses include:

- **Kaizad Mistry**, Corporate Vice President, Strategy and Technology for Business Enablement and Technology Development, located in Hillsboro, Oregon, who was responsible for overseeing design and development for the manufacturing process technologies for the accused processors.  Mr. Mistry is knowledgeable regarding the design and fabrication of the accused processors, as well as prior art Intel products.

- **Ray Cotner**, Vice President and Director of LTD Thin Films Technology, located in Hillsboro, Oregon, who is responsible for managing the engineering teams that research and design the diffusion and thin-film process steps used to fabricate the accused Intel processors.  Mr. Cotner is knowledgeable regarding the design and fabrication of the accused processors, as well as prior art Intel products.

- **Leonard Pipes**, Ion Implant Engineering Manager and Principal Engineer, located in Hillsboro, Oregon, who is responsible for overseeing the Ion Implantation team that researches and designs the ion implantation process steps used to introduce dopants into the accused Intel processors.  Mr. Pipes is knowledgeable regarding the design and fabrication of the accused processors, as well as prior art Intel products.

- **Curtis Tsai**, Senior Principal Engineer, located in Hillsboro, Oregon, who contributes to device design and integration for the accused Intel processors. Mr. Tsai is knowledgeable regarding design and fabrication of the accused processors.

(Ex. 1, Mistry Decl. ¶¶ 7–8.)

As noted above, potential trial witnesses with information regarding the accused manufacturing steps for the accused Intel flash memory products are primarily located in Northern California—Folsom or Santa Clara—or in China. (Ex. 4, Parat Decl. ¶ 9.) For example, Krishna Parat is an Intel Fellow located in Santa Clara who has worked on the development of Intel's flash memory technology for over 30 years. (*Id.* ¶¶ 1–2.) Other potential witnesses with knowledge of Intel's flash memory technology who are located in Folsom or Santa Clara include Shafqat Ahmed, Shyam Ramalingam, and Minsoo Lee. (*Id.* ¶ 9.)

It would clearly be more convenient for Intel's Oregon-based witnesses to testify at trial in Oregon, rather than traveling over 1,600 miles to Waco. It would also clearly be more convenient for Intel's witnesses located in Northern California to travel to Oregon, rather than make the much longer trip to Waco. *See WSOU Invs. LLC v. Arista Networks, Inc.*, No. W-20-CV-01083-ADA, 2021 WL 6015526, at *4 (W.D. Tex. Nov. 5, 2021) (Albright, J.) ("The Fifth Circuit has established the '100-mile rule,' providing that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'") (quoting *Volkswagen*, 371 F.3d at 204–05). The California-based witnesses can take a two-hour nonstop flight to Portland—and witnesses located in Santa Clara and Folsom, in particular, have access to Intel's air shuttle to Intel's Hillsboro campus. (Ex. 4, Parat Decl. ¶ 11.) While any travel to Texas would be significantly less convenient for Intel's witnesses than travel to Oregon, even more travel time would be required for these witnesses to appear in Waco. *See In*

*re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021) ("There is no major airport in the Waco Division of the Western District of Texas.").

In contrast to the many Intel witnesses who are located in Oregon (and in nearby Northern California), no potential Intel witnesses with relevant knowledge are located in this District. (Ex. 1, Mistry Decl. ¶¶ 11–12; Ex. 5, Boatright Decl. ¶¶ 4–5; Ex. 3, Veysseire Decl. ¶¶ 4–6.) Nor is Intel aware of any potential non-party witnesses located in this District. For its part, Greenthread has no apparent ties to this District whatsoever. As noted above, Greenthread's principal place of business is in Dallas, and the sole named inventor of the patents-in-suit appears to reside in the suburbs of Dallas. (Dkt. 38, Am. Comp. ¶ 3; Ex. 8.)

The Federal Circuit has made clear that "this factor weigh[s] substantially in favor of transfer" when "a substantial number of material witnesses reside within the transferee venue" and "no witnesses reside within the [transferor venue]." *In re Genentech*, 566 F.3d at 1345. Here, a substantial number of potential Intel witnesses reside in Oregon (or close by in Northern California) and no known witnesses reside in this District. *See MasterObjects, Inc. v. Facebook, Inc.*, No. 6-20-CV-00087-ADA, 2021 WL 7449852, at *4 (W.D. Tex. July 13, 2021) (Albright, J.) ("Importantly, the venue need not be convenient for *all* witnesses.") (emphasis in original). Accordingly, this most important factor strongly favors transfer to Oregon.

### 3. The Relevant Sources of Proof Also Favor a Transfer to Oregon.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d at 1345; *see also In re Apple Inc.*, 979 F.3d at 1340; *10Tales, Inc., v. TikTok Inc.*, No. 6:20-CV-00810-ADA, 2021 WL 2043978, at *2 (W.D. Tex. May 21, 2021). Beyond the documents' physical location, "the location of document custodians and location where documents are created and maintained, which may bear

on the ease of retrieval," is also relevant. *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021). Under this factor, "the question is *relative* ease of access, not *absolute* ease of access." *Datascape, Ltd. v. Dell Techs. Inc.*, No. 6:19-CV-00129-ADA, 2019 WL 4254069, at *2 (W.D. Tex. June 7, 2019) (Albright, J.) (emphasis in original) (citing *Radmax*, 720 F.3d at 288); *see also In re Genentech*, 566 F.3d at 1345.

Intel's technical documents that show the details of manufacturing process technology for the Accused Intel Products are stored on secure servers at Intel facilities outside of Texas. (Ex. 1, Mistry Decl. ¶ 9; Ex. 4, Parat Decl. ¶ 10.) Intel is unaware of any relevant evidence regarding Intel's accused manufacturing process technology that is physically stored in the Western District of Texas. (*Id*.) In addition, Intel employees with access to technical documents related to manufacturing process technology for the accused Intel processors are located outside of Texas. (Ex. 1, Mistry Decl. ¶ 9.) Because relevant document custodians who create and maintain documents are located primarily in Oregon or in Northern California, access to sources of proof is relatively easier in Oregon than in this District, which supports transfer. *See Datascape*, 2019 WL 4254069, at *2; *LoganTree LP v. Apple Inc.*, No. 6:21-CV-00397-ADA, 2022 WL 1491097, at *4 (W.D. Tex. May 11, 2022) (Albright, J.) (finding this factor favors transfer because plaintiff "has failed to make a compelling case that this District is home to substantial amounts of evidence").

### 4.    The Local Interests Likewise Favor a Transfer to Oregon.

Oregon's local interest in this case is strong. Because the manufacturing process technology for the accused Intel processors was designed and developed in Oregon and individuals with key knowledge regarding the accused technology live and work in that District, this case plainly "calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). In contrast, "[n]o parties, witnesses, or evidence have any

13

material connection to the venue chosen by the plaintiff." *Nintendo*, 589 F.3d at 1198; *see also In re Google LLC*, 2021 WL 4427899, at *6 ("Because the accused products were designed and developed in the transferee venue and are not related to Google's presence in Texas, we agree that the local interest factor should have been weighted strongly in favor of transfer."); *Scramoge Tech. Ltd. v. Apple Inc.*, No. 6:21-CV-00579-ADA, 2022 WL 1667561, at *11 (W.D. Tex. May 25, 2022) (Albright, J.) (finding "the NDCA's local interest outweighs the WDTX's local interest" where some of Apple's engineers "reside in the WDTX and designed features of the accused products" but "more of Apple's engineers and their teams are in the NDCA").

### 5.    The Remaining Factors Are Neutral.

**Availability of Compulsory Process.**   Intel is unaware of any non-party witnesses who are located in Texas or who are subject to this Court's subpoena power.  While Intel also is unaware of any potential non-party witnesses who are located in Oregon, Intel's investigation is ongoing, and it is possible that former Intel employees with relevant knowledge regarding the accused products or prior art are located in Oregon.  At a minimum, this factor is neutral.

**Court Congestion.**   This Court has a large number of pending patent cases (*see* Ex. 9), far more than the District of Oregon (*see* Ex. 10).  Moreover, while it is possible that this case could be resolved faster in this Court than in Oregon, "the speed of the transferee district court should not alone outweigh all of th[e] other factors" favoring transfer.  *In re Genentech*, 566 F.3d at 1347. Accordingly, at a minimum, this factor is also neutral.

**Practical Considerations and Considerations Regarding Familiarity With Governing Law and Conflict of Laws.**   The practical considerations factor is neutral because neither this District nor Oregon has any experience with the patents-in-suit, which have previously been asserted only in the Eastern District of Texas.  *See Greenthread, LLC v. Samsung Electronics Co., Ltd. et al.*, Case No. 2:19-cv-00147, Dkt. 1 (E.D. Tex.) (asserting certain of the patents-in-suit).

14

Moreover, both districts are familiar with the relevant patent laws, and this case does not involve any conflict of laws or the application of foreign law. Hence, these factors likewise are neutral.

> **D.    If Greenthread's Claims Against Dell Are Not Severed, an Intra-District Transfer to the Austin Division Is Warranted.**

In the alternative, if this Court denies Defendants' request to sever the claims against Intel or otherwise decides to maintain this case in the Western District of Texas, Intel respectfully requests that this case be transferred to the Austin Division. "The § 1404(a) factors apply as much to transfers between divisions of the same district as to transfers from one district to another." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). As discussed above, this case has no relevant connections to the Waco Division. Moreover, as between Waco and Austin, Austin would be the relatively more convenient forum for potential Intel witnesses, all of whom reside outside of Texas. Finally, because Austin has an Intel facility, it has a relatively greater interest in the resolution of this dispute than does Waco. *See VLSI Tech. LLC v. Intel Corp.*, No. 6:19-CV-00254-ADA, 2019 WL 8013949, at *5 (W.D. Tex. Oct. 7, 2019) (transferring claims against Intel to Austin where "it is apparent the Austin Division has a greater localized interest" than Waco).

## IV.    CONCLUSION

Because Greenthread's claims against Dell related to the Accused Intel Products are peripheral to its claims against Intel—such that those claims against Dell will rise or fall with the outcome of the Intel claims—Defendants respectfully request that the Court sever Greenthread's claims against Intel and stay Greenthread's claims against Dell that are based on the Accused Intel Products. Moreover, if Greenthread's claims against Intel are severed, each of the private and public interest factors either strongly favors transferring those claims to Oregon or is neutral, which warrants an inter-district transfer pursuant to 28 U.S.C. § 1404(a). Alternatively, if Greenthread's claims against Intel are not severed, this case should be transferred to the Austin Division.

Dated: June 28, 2022

Respectfully submitted,

*/s/ J. Stephen Ravel*
J. Stephen Ravel
Texas State Bar No. 16584975
**KELLY HART & HALLMAN LLP**
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
steve.ravel@kellyhart.com

Paige Arnette Amstutz
Texas State Bar No. 00796136
**SCOTT DOUGLASS & McCONNICO LLP**
303 Colorado Street, Suite 2400
Austin, Texas 78701
Telephone: (512) 495-6300
pamstutz@scottdoug.com

Abhishek Bapna (*Pro Hac Vice*)
George S. Soussou (*Pro Hac Vice*)
Ryan Joseph Sheehan (*Pro Hac Vice*)
Lupco (Lewis) V. Popovski (*Pro Hac Vice*)
**PATTERSON BELKNAP WEBB & TYLER LLP**
1133 Avenue Of The Americas
New York, NY 10036
(212) 336-2000
Fax: (212) 336-2911
abapna@pbwt.com
gsoussou@pbwt.com
rsheehan@pbwt.com
lpopovski@pbwt.com

*Attorneys for Defendants Dell Inc. and Dell Technologies Inc.*

Gregory S. Arovas (*Pro Hac Vice*)
Robert A. Appleby (*Pro Hac Vice*)
Todd M. Friedman (*Pro Hac Vice*)
Leslie M. Schmidt (*Pro Hac Vice*)
Jon R. Carter (*Pro Hac Vice*)
Christopher DeCoro (*Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY  10022
Tel: (212) 446-4800
Fax: (212) 446-4900
garovas@kirkland.com
robert.appleby@kirkland.com
todd.friedman@kirkland.com
leslie.schmidt@kirkland.com
jon.carter@kirkland.com
christopher.decoro@kirkland.com

Nyika O. Strickland (*Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle Street
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (202) 862-2200
nstrickland@kirkland.com

Abigail Lauer Litow (*Pro Hac Vice*)
John Rhine (*Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 879-5000
Fax: (202) 879-5200
abigail.litow@kirkland.com

Bao Nguyen (*Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
555 California Street  27th Floor
San Francisco, CA 94104
Tel: (415) 439-1400
Fax: (415) 439-1500
bnguyen@kirkland.com

16

*Attorneys for Defendants Intel Corporation;*
*Dell Inc.; and Dell Technologies Inc.*

## CERTIFICATE OF CONFERENCE

The undersigned certifies counsel have conferred. Plaintiff opposes the relief sought.

Accordingly, the Motion is presented to the Court for resolution.

*/s/ J. Stephen Ravel*
J. Stephen Ravel

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record are being served with a copy of the foregoing

sealed documents via electronic mail and publicly filed documents via the Court's CM/ECF system

on June 28, 2022.

*/s/ J. Stephen Ravel*
J. Stephen Ravel