**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **GREENTHREAD, LLC** | § | |
| *Plaintiff* | § | |
| | § | |
| **-vs-** | § | **6:22-CV-105-ADA** |
| | § | |
| **INTEL CORPORATION, DELL** | § | |
| **INC., AND DELL TECHNOLOGIES** | § | |
| **INC.** | § | |
| *Defendants.* | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Came for consideration is Defendant Intel's Opposed Motion to Sever Plaintiff's Claims against Intel, Transfer Venue of Those Claims to Oregon, and Stay Claims Against Dell Based on Accused Intel Products (the "Motion"). ECF No. 60. After carefully reviewing the Motion, the related pleadings, and the applicable law, the Court is of the opinion that Defendant's Motion should be **GRANTED.**

## I.      BACKGROUND

Plaintiff Greenthread, LLC ("Greenthread") sued Intel Corporation ("Intel") and Dell Inc./Dell Technologies Inc. ("Dell"), for alleged infringement of patents directed to certain manufacturing steps for semiconductor devices. ECF No. 38 ¶¶ 1–2. Certain of Greenthread's claims against Dell are based on Dell's incorporation of accused Intel processors and flash memory products (the "Accused Intel Products") into Dell products. *Id.* ¶¶ 61–62. Greenthread's Complaint asserts the patents-in-suit against Intel "semiconductor products that practice the claimed inventions, including Intel Accused CPUs and Intel Accused Flash Memory Products." *Id.* ¶ 49. Greenthread accuses Intel of infringement based on certain manufacturing steps undertaken for the Accused Intel Products—specifically, "process steps for creating regions with graded dopant

1

concentrations." *Id.* ¶ 52. Greenthread accuses Dell of infringing the patents-in-suit by "making, using, offering to sell, selling within, and/or importing into the United States Dell-Intel Accused Products." *Id.* ¶ 63. Greenthread defines "Dell-Intel Accused Products" as "Dell Products incorporating or comprising Intel Accused Products," including "Intel Accused CPUs and Intel Accused Flash Memory Products." *Id.* ¶¶ 61–62; *see also* ECF No. 38-8 at 7–8. Greenthread also accuses Dell of infringement based on separate flash memory products sold by Micron and Western Digital and image sensors sold by Sony. ECF No. 38 ¶¶ 64–81.

## II.    LEGAL STANDARD

### A.  Severance

A "court may sever any claim against a party" to facilitate transfer. *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1366 (Fed. Cir. 2014). "[T]he guiding principles" of the customer-suit doctrine "are efficiency and judicial economy." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). Under this doctrine, a stay of claims against downstream customer defendants is warranted where the case against the manufacturer has the potential to resolve the major issues against those customer defendants. *Id.* at 1358. "When a patent holder sues multiple accused infringers, it may be proper for a court to sever certain claims against one or more of the accused infringers." *Collaborative Agreements, LLC v. Adobe Sys. Inc.*, No. 1-14-CV-356-LY, 2015 WL 10818739, at *2 (W.D. Tex. Aug. 21, 2015) (*citing* Fed. R. Civ. P. 21). The Court has the power to sever the claims against properly joined Defendants and to stay the proceedings as to any of them. *Id; see also In re Nintendo*, 756 F.3d at 1365-66) (explaining that where suit is brought against a manufacturer and its customers, the action against the customers may be properly severed and stayed pending resolution of the case against the manufacturer to promote judicial economy.).

2

To determine whether to sever claims when a plaintiff sues both a supplier and its customer for infringement, the Court should consider whether: "(1) the claim to be preserved is peripheral to the remaining claims; (2) the adjudication of the remaining claims is potentially dispositive of the severed claim; and (3) the transfer of the remaining claims is warranted under 28 U.S.C. § 1404(a)." *Collaborative Agreements, LLC,* 2015 WL 10818739, at *2.

## B. Transfer

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Title 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the [transfer] destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a

case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*.

### III.    ANALYSIS

#### A.  Severance

The Court "must weigh carefully the comparative inconvenience of splitting the suit versus the advantages to be gained from a partial transfer" when considering sever-and-transfer requests. *See In re: AMAZON.COM, INC*., No. 2022-157, 2022 WL 17688072, at *3 (Fed. Cir. Dec. 15, 2022) (citing *Def. Distributed v. Bruck*, 30 F.4th 414, 428 (5th Cir. 2022) (internal quotation marks and citation omitted). The inclusion of a defendant only peripherally involved in, or indirectly connected to, the alleged wrongdoing should not preclude severance and partial transfer to a more convenient forum. *See Nintendo*, 756 F.3d at 1366.

In this case, the Court first need analyze whether Dell is truly a customer of Intel as it relates to the Accused Intel Products. The rationale underlying the customer-suit doctrine is that where there is a manufacturer who is the true defendant in the dispute, the court should not impose the burdens of litigation on the customer. *In re Nintendo*, 756 F.3d at 1365.

In *Nintendo*, the plaintiff filed suit in an Eastern District of Texas court against Nintendo and eleven of its customer-retailers. *Id.* at 1364. Our sister court found that the customer-suit doctrine did *not* apply because the manufacturer and customer were joined in the same suit. *Id*. The Federal Circuit reversed the district court's ruling while still applying the reasoning of the

customer-suit doctrine. *See id*. at 1365 ("While the circumstances of this case differ from those of the customer-suit exception . . . the same general principles govern in that Nintendo is the true defendant.") (internal citations omitted). The Federal Circuit found that severance was appropriate because the plaintiff had no claim against the customer-retailers unless the infringement claims against the manufacturer-defendant were successful. *Id*. at 1366. The appeals court concluded that severing and staying the actions against the customer-retailers was appropriate, especially since the customer-retailers stipulated to be bound by the judgment against the manufacturer defendant.

Here, Intel is the manufacturer defendant analogous to Nintendo in the Federal Circuit case. Dell is analogous to the customer-retailers in *Nintendo* with respect to claims related to the accused Intel processors, because Dell was not involved in the design, development, or manufacture of the infringing technology in the Accused Intel Products, which it incorporates into its own products. Greenthread, however, asserts that Dell ████████████ the Accused Intel Products. ECF No. 83 at 3–4. It contends that ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████ *Id.* Greenthread also asserts that Dell and Intel ███████████ the Accused Intel Products to ██████████████████████████ *Id.* at 4.

The Court agrees with Intel that Greenthread accuses Intel of infringing through its products' graded dopant profiles, and it alleges Dell infringes by incorporating these Intel components. ECF No. 38 ¶¶ 1–2; 61–62. Any ██████████████ by Intel and Dell focuses on the ████████████████████████████████████████████████████████████████████ Greenthread does not show that Dell has substantive knowledge about the patent infringement alleged by Greenthread. ████████████████████████████████████████

████████████████████████ which weighs in favor of finding that Greenthread's claims against

Dell are peripheral. ECF No. 60 at 5. ███████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ Dell, like the customer-

retailers in *Nintendo*, ██████████████████████████████

████████████████████████████████████████████████. ECF

No. 91 at 3 n. 4. Allowing the claims based on the Accused Intel products to proceed against Dell

would subject it to unnecessary burden.

This case differs from *Nintendo*, though, because Greenthread amended its Complaint to

accuse Dell of infringement based on products sold by unrelated manufacturers before Intel filed

this Motion. ECF No. 38 ¶¶ 64–81 (asserting infringement claims against Dell based on Micron,

Sony, and Western Digital products). Greenthread argues that because of this, severance is

improper because Dell is not a "peripheral defendant." ECF No. 83 at 6. It cites to *Fractus, S.A. v.*

*AT&T Mobility LLC* to support its contention that severance is inappropriate, because the claims

against Dell based on unrelated manufacturers' products are entirely unrelated to the claims sought

to be severed. *Id.* at 8–9 (citing No. 2:18-CV-00135-JRG, 2019 WL 3253639, at *4 (E.D. Tex.

July 19, 2019)). But the Court finds *Fractus* inapplicable. There, the manufacturer intervened and

voluntarily joined the suit and waived any misjoinder defense. *See Fractus*, 2019 WL 3253639, at

*1– 2, 8. Also, ████████ the *Fractus* customers refused to be bound by any findings against the

manufacturer, and that case did not involve transfer. *Id.* at *5.

Yet because Greenthread asserts additional claims against Dell unrelated to the Accused

Intel Products, it cannot be said that all remaining claims against Dell are peripheral. Adjudication

of the severed claims would not be dispositive of the remaining claims against Dell unrelated to the Accused Intel Products. Thus, the Court does not find it appropriate to determine whether severance is proper based solely on the customer-suit exception doctrine.

The Court need also consider Intel's transfer request as part of its severance analysis. *See Shifferaw v. Emson USA,* 2010 WL 1064380, at *4 (E.D. Tex. Mar. 18, 2010). Indeed, the Federal Circuit recently reproached this Court for failing to assess the advantages to be gained from a partial transfer (based on the transfer factors) and then determine whether those benefits are "outweighed by the judicial economy considerations of having all claims determined in a single lawsuit." *In re: AMAZON.COM, INC.*, 2022 WL 17688072, at *3 (quoting *In re Rolls Royce Corp.*, 775 F.3d 671, 681 (5th Cir. 2014)). There, the Federal Circuit explained that, once severed, the transfer factors weighed heavily in favor of transferring the claims against the manufacturer to another forum. *Id.* This Court, then, need also consider whether severance is still appropriate to facilitate transfer of Greenthread's claims against Intel.

## B. Transfer

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice," this Court may transfer a case to any district where the case could have been brought. 28 U.S.C. § 1404(a). When evaluating a request for transfer, courts in the Fifth Circuit weigh four private interest factors: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020) (quoting *Volkswagen I*, 371 F.3d at 203). Courts in this Circuit also consider four public interest factors: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests

decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or of] the application of foreign law." *Id.* (quoting *Volkswagen I*, 371 F.3d at 203).

### 1. Venue and Jurisdiction in the Transferee Forum

Greenthread could have brought its claims against Intel in Oregon, as Intel has a regular and established place of business in Hillsboro, Oregon, and it has sufficient minimum contacts there such that personal jurisdiction is proper. *See* 28 U.S.C. § 1400(b). Greenthread contends that venue and jurisdiction are not proper in Oregon only as to Dell. ECF No. 83 at 7–8. The Court disregards this argument in its partial transfer analysis of the claims against Intel.

### 2. Private Interest Factors

#### a. Cost of Attendance of Willing Witnesses

The most important factor in the transfer analysis is the convenience of the witnesses. *See In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). The Fifth Circuit has established the "100-mile rule," providing that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. Yet the Federal Circuit has refused to apply the rule "rigidly," such as where it may "result in all identified witnesses having to travel away from their home and work in order to testify in Texas, which would 'produce results divorced from' the rule's underlying rationale." *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *5 (Fed. Cir. Sept. 27, 2021) (quoting *In re TracFone Wireless, Inc.*, 852 F. App'x 537, 539 (Fed. Cir. 2021)). This has led the Federal Circuit to disregard distance altogether in favor of considering travel-time statistics. *See In re Google LLC*, 2021 WL 4427899, at *12 ("[T]ime is a more important metric than distance."). Or

to simply disregard any difference in convenience between the relevant fora where it is comfortable concluding that a witness would have to travel a significant distance no matter if the action is transferred or not. *See In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York to either Texas or California venues); *In re Genentech, Inc.*, 566 F.3d at 1344 (stating that the 100-mile rule should not be "rigidly" applied in the context of foreign witnesses); *In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at *6 (Fed. Cir. Oct. 13, 2021). It has even gone as far as opining that "[t]he comparison between the transferor and transferee forum is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014); *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021).

Intel asserts that transfer is warranted here because "[p]otential Intel trial witnesses who are involved with and knowledgeable about these processors' manufacturing process are located in Oregon." ECF No. 60 at 2; ECF No. 60-1 ¶¶ 7–9. It identifies Kaizad Mistry, Corporate Vice President, Strategy and Technology for Business Enablement and Technology Development, located in Hillsboro, Oregon, who was responsible for overseeing design and development for the manufacturing process technologies for the accused processors. *Id.* Ray Cotner is Vice President and Director of LTD Thin Films Technology, located in Hillsboro, Oregon, and is responsible for managing the engineering teams that research and design the diffusion and thin-film process steps used to fabricate the accused Intel processors. *Id.* Leonard Pipes is the Ion Implant Engineering Manager and Principal Engineer, located in Hillsboro, Oregon, and is responsible for overseeing the Ion Implantation team that researches and designs the ion implantation process steps used to introduce dopants into the accused Intel processors. Curtis Tsai, Senior Principal Engineer, is in Hillsboro, Oregon, and contributes to device design and integration for the accused Intel

processors. *Id.* Greenthread does not challenge the relevancy of these witnesses, and the Court finds that Intel provides sufficient information to identify these witnesses as material and relevant.

Intel also identifies other potential trial witnesses with information regarding the accused manufacturing steps for the accused Intel flash memory products in Northern California and in China. ECF No. 60 at 3. Greenthread, again, does not challenge that these witnesses are relevant, nor that it would be more convenient for them to attend trial in Oregon. While the Court generally finds that witnesses in China are given little to no weight, it acknowledges that the witnesses in Northern California would likely find trial more convenient in Oregon. *See In re Genentech, Inc.*, 566 F.3d at 1344 (stating that the 100-mile rule should not be "rigidly" applied in the context of foreign witnesses).

Alternately, Intel maintains that no potential Intel witnesses with relevant knowledge are in this District. ECF No. 60 at 12. It asserts also that there are no potential non-party witnesses in this District. *Id.* Yet Greenthread contends that Intel's Austin-based employees are intimately involved in the technology at issue. ECF No. 83 at 9. In support of this contention, it points to testimony from the head of Intel's ███████████████ who stated that Austin-based engineers includes the ████████████████████████████ ECF No. 83-2 at 70:9-13. It explains that ████████ is the CPU component that Greenthread reverse engineered before filing the Complaint and is the focus of the infringement contentions. ECF No. 38-9 at 10 ████████████████████████████████████████████████ ████████████████████████████

Greenthread also asserts that ███ of Intel's Dell sales team is in this District, and that no one responsible for selling or marketing Intel's products to Dell is in Oregon. ECF No.83 at 5. Among the Dell sales team members in this District is a lead account manager for the ████████

███████ ECF No. 83 at 5. Greenthread relies on the convenience of these Dell witnesses for its opposition to the Motion, since it maintains that severance is inappropriate. *Id.* at 11. But this reliance is misplaced, as the Court will not consider the convenience of these potential witnesses in its analysis of whether transfer of Intel's claims is appropriate.

Moreover, Greenthread asserts that Dr. Rao, the only inventor of the patents-in-suit, is likely to be Greenthread's main witness at trial, and he is in Dallas. ECF No. 83 at 3. Dr. Rao is medically unable to travel to Oregon, thus Greenthread contends that this should weigh against transfer. *Id.* The Court agrees that inventors' testimony is very important and that it would be more convenient for Dr. Rao to travel to this District for trial.

As to Greenthread's contention regarding the ███████████, Intel counters that the dopant profiles are the relevant technology, and that the Austin engineers on Intel's ███████ ██ do not work on the technology that implements those profiles, including for Intel's ███████ ECF No. 91 at 3. Intel also argues that Greenthread's "conclusory assertion" that the Intel sales employees in Austin are relevant to damages is insufficient in comparison to the specific relevant witnesses Intel identified. *Id.* (citing *Led Wafer Solutions, LLC v. Samsung Elecs. Co., Ltd.*, No. 6:21-CV-00292-ADA, Dkt. 95 at 12 (W.D. Tex. Aug. 25, 2022)).

The Court finds that this factor weighs in favor of transfer. The Court accords weight to Dr. Rao's convenience as a key witness for Greenthread and for whom Greenthread asserts that travel to Oregon would be impossible. On the other hand, Intel identifies multiple witnesses in Oregon and in Northern California for whom trial in Oregon would be more convenient. Likewise, the Court does not find that Greenthread provides enough factual information for the Intel witnesses it identified to keep the scales from tipping towards transfer. While the unidentified Austin-based engineers may have relevant information on the ███████, based on the record before

it, the Court finds that this is insufficient in comparison to the identified witnesses in Oregon and

in Northern California with relevant and material knowledge of the accused dopant profiles.

Regarding the sales teams, the Court accords some weight to the fact that Greenthread

elicited testimony from Intel's corporate witness that Intel has sales teams in this District,

especially considering that Intel does not directly dispute that these witnesses are relevant. ECF

No. 83-7 at 23:6–24:14; *see also* ECF No. 91 at 3–4 (contending only that Greenthread's assertion

that the Intel sales employees is conclusory). But the Court finds that this is likewise insufficient

when compared to the relevant witnesses located in or closer to Oregon, given that Greenthread

does not provide any more explanation as to the testimony it expects to elicit from these witnesses.

Finally, Greenthread asserts that even for the Intel witnesses in Oregon or in California, Intel's

private airplane shuttle service for its employees would make travel "very convenient." ECF No.

83 at 5. The Court finds this argument unpersuasive, though, as trial in Oregon would likely still

be more convenient than traveling to this District.

*Conclusion.* On balance, the Court finds this factor weighs in favor of transfer.

### b. Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary

evidence, such as documents and physical evidence, is stored." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-

cv-00372-ADA, 2019 WL 4743678, at *5 (W.D. Tex. Sept. 10, 2019). This factor relates to the

relative—not absolute—ease of access to non-witness evidence. *See In re Radmax*, 720 F.3d at

288; *In re Apple*, 979 F.3d at 1339. "[T]he movant need not show that all relevant documents are

located in the transferee venue to support a conclusion that the location of relevant documents

favors transfer." *In re Apple*, 979 F.3d at 1340; *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321

(Fed. Cir. 2021) ("We have held that the fact that some evidence is stored in places other than either the transferor or the transferee forum does not weigh against transfer.").

The Fifth Circuit has held that, even in the context of electronic documents that can be accessed anywhere on earth, this factor is not superfluous. *See Volkswagen II*, 545 F.3d at 316; *see also In re Dish Network LLC*, No. 2021-182, 2021 WL 4911981, at *6 (Fed. Cir. Oct. 21, 2021). Though having consistently characterized that holding as antiquated in the setting of a modern patent dispute, this Court will continue to analyze this factor with a focus on the location of: physical documents and other evidence; and the hardware storing the relevant electronic evidence. *See Def. Distributed v. Bruck*, 30 F.4th 414, 434 & n.25 (5th Cir. 2022) (giving weight to the location of servers hosting the electronic documents in dispute). The Federal Circuit has held, however, that it is error not to also consider: "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021); *see also Def. Distributed*, 30 F.4th at 434 & n.25 (considering, under this factor, where the "research, design, development, manufacturing, and publishing" of the allegedly offending files occurred). Finally, evidence located at a party's office that is not a "place of regular business" may be discounted. *See In re Google LLC*, No. 2022-140, 2022 WL 1613192, at *4 (Fed. Cir. May 23, 2022).

The Court finds that this factor favors transfer. Intel argues that relevant document custodians who create and maintain documents are located primarily in Oregon or in Northern California, so access to sources of proof is relatively easier in Oregon than in this District. ECF No. 60 at 13. It also asserts that the technical documents that show the details of manufacturing process technology for the Accused Intel Products are stored on secure servers at Intel facilities outside of Texas, and that Intel is unaware of any relevant evidence regarding its accused

manufacturing process technology that is physically stored in this District. *Id.* While Intel asserts that its servers and physical documents are "outside of Texas," it does not specify where, except to note that the servers are at Intel facilities. ECF No. 60-1 ¶ 9; ECF No. 60-4 ¶ 10. Greenthread challenges that Intel failed to show that relevant sources of proof are exclusively available in Oregon. *Id.* Indeed, the Fifth Circuit recently stated, "[t]he location of evidence bears much more strongly on the transfer analysis when, as in *Volkswagen*, the evidence is physical in nature." *In re Planned Parenthood Fed'n of Am., Inc.*, No. 22-11009, 2022 WL 16549164, at *3 (5th Cir. Oct. 31, 2022). But based on the lack of evidence regarding storage of hard copies, that neither party presents any evidence of Intel's sources of proof in this District, and that the relevant document custodians are primarily in Oregon and in Northern California, this weighs in favor of transfer.

Greenthread alternately contends that its documents are in Dallas, some of which are not in electronic format. ECF No. 83 at 10. The Court accords this weight but recognizes, as it has done many times before, that "in patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d at 1345. Greenthread's reliance on Dell's documents in this District is also insufficient, as the Court has already determined it will not include Dell in this partial transfer analysis. Here, the Court agrees with Intel that its relevant document custodians who create and maintain documents are located primarily in Oregon or in Northern California, so access to sources of proof is likely relatively easier in Oregon than in this District.

*Conclusion.* On balance, this factor weighs in favor of transfer.

c.   Availability of Compulsory Process

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at \*4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 WL 4743678, at \*14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). When "there are several witnesses located in the transferee forum and none in the transferor forum," this factor favors transfer. *In re Google*, No. 2021-171, 2021 WL 4592280, at \*5 (Fed. Cir. Oct. 6, 2021). Further, this Court cannot "discount" third-party "entities" having pertinent information in the transferee venue "just because individual employees were not identified." *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at \*8 (Fed. Cir. Nov. 15, 2021) (quoting *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020)).

The Federal Circuit has held that, under Fifth Circuit law, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at \*3 n.1 (Fed. Cir. Sept. 25, 2018); *see also In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at \*4 (Fed. Cir. Aug. 2, 2021) ("[W]here . . . the movant has identified multiple third-party witnesses and shown that

they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness").

Intel claims that this factor is neutral, as it is unaware of any non-party witnesses in Texas or in Oregon. ECF No. 60 at 14. On the other hand, Greenthread contends that if severance and transfer are granted, then Dell will not be a party to the Oregon suit and Dell witnesses would be beyond the scope of compulsory process. ECF No. 83 at 10. Greenthread does not explain how Dell witnesses would be relevant after severance, given that no Dell products would be at issue after severance and transfer. Thus, the Court again concludes that these witnesses are irrelevant to its partial transfer analysis.

*Conclusion.* The Court finds that neither party has identified relevant non-party witnesses in Texas or in Oregon. Thus, this factor is neutral.

> d.   Practical Problems

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "[G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer" but delay in already protracted litigation may account for some weight. *In re Radmax*, 720 F.3d at 289.

"Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). The interests of justice may be best served by transferring ancillary matters pending in other forums to the forum of the main action, particularly if the main action is complex. *Bank of Texas v. Computer Stat., Inc.*, 60 F.R.D. 43, 45 (S.D. Tex. 1973). "[T]he ability to transfer a case

to a district with numerous cases involving some overlapping issues weighs at least slightly in favor of such a transfer." *In re Apple*, 979 F.3d at 1344. But district courts should not rely "on considerations of judicial economy arising after the filing of the lawsuit or the transfer motion," such as suits filed in the transferor district after a request to transfer. *In re Netscout*, 2021 WL 4771756, at *12. Further, "the mere co-pendency of infringement suits in a particular district" does not automatically tip transfer in one direction or the other. *Id.* at *13.

The Court finds this factor weighs slightly against transfer. Intel argues this factor should be neutral, ECF No. 60 at 14, while Greenthread asserts that Intel's standard forum selection clause for contracts with its customers requires suit be filed in Delaware, where Intel has no offices or employees. ECF No. 83 at 12. Thus, Greenthread claims that Intel cannot seriously claim that Texas is inconvenient when it chooses an even more remote location for litigation. *Id.* While this position may carry some weight, each case presents unique facts that may warrant transfer. Despite Intel's forum selection clause for contracts with its customers, the Court will not automatically assume that this forum is convenient given the unique facts in this case.

Yet the Court will still consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. Severance and partial transfer in this case will force Greenthread to litigate its claims against Intel and Dell in two separate lawsuits in two forums.

*Conclusion.* The judicial economy considerations of having all Greenthread's claims determined in a single lawsuit pushes this factor at least slightly against transfer.

### 3.  Public Interest Factors

####   a.  Court Congestion

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial

and be resolved." *In re Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343. A faster

average time to trial means more efficient and economical resolutions of the claims at issue. That

said, "[a] court's general ability to set a fast-paced schedule is not particularly relevant to this

factor." *In re Apple*, 979 F.3d at 1344. Moreover, when other relevant factors weigh in favor of

transfer or are neutral, "then the speed of the transferee district court should not alone outweigh

all of those other factors." *In re Genentech*, 566 F.3d at 1347.

While Intel argues that this factor should be neutral because this Court has a larger number

of patent cases compared to the District of Oregon, ECF No. 60 at 14, Greenthread correctly asserts

that Oregon's average time to trial is slower than this Court's. ECF No. 83 at 12. Recent statistics

show that this Court has been able to bring cases to trial within two years.[1]

---

[1] *See, e.g., MV3 Partners v. Roku, Inc.,* 6:18-cv-00308-ADA (W.D. Tex., filed Oct. 16, 2018) (23.7 months from case filing to trial); *CloudofChange, LLC, v. NCR Corp.*, No. 6:19-cv-00513-ADA (W.D. Tex., filed August 30, 2019) (20.3 months from case filing to trial); *VLSI Tech. LLC v. Intel Corp.*, No. 6:21-cv-00057-ADA (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. v. Amazon.Com Inc.*, No. 6:21-cv-00511-ADA (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial); *Profectus Tech. LLC v. Google LLC*, 6:20-cv-00101-ADA (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial); *Jiaxing Super Lighting v. CH Lighting Tech.*, 6:20-cv-00018-ADA (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *VideoShare LLC v. Google LLC*, 6:19-cv-663-ADA (W.D. Tex., filed Nov. 15, 2019) (23.8 months from case filing to trial); *NCS Multistage Inc. v. Nine Energy Serv.'s, Inc.*, No. 6:20-cv-00277-ADA (W.D. Tex., filed Mar. 24, 2020) (21.8 months from case filing to trial); *EcoFactor, Inc. v. Google LLC*, No. 6:20-cv-00075-ADA (W.D. Tex., filed Jan. 31, 2020) (24 months from case filing to trial); *Densys Ltd. v. 3Shape Trio A/S*, 6:19-cv-00680-ADA (W.D. Tex., filed Nov. 26, 2019) (28.3 months from case filing to trial); *Appliance Computing III, Inc. v. Redfin Corp.*, No. 6:20-cv-00376-ADA (W.D. Tex., filed May 11, 2020) (24 months from case filing to trial); *Caddo Sys. Inc., v. Microchip Tech. Inc.*, No. 6:20-cv-00245-ADA (W.D. Tex., filed March 27, 2020) (26.5 months from case filing to trial); *SunStone Information Def., Inc. v. International Bus. Machines Corp.*, No. 6:20-cv-1033-ADA (W.D. Tex., filed Nov. 9, 2020) (21.0 months from case filing to trial); *NCS Multistage Inc. v. TCO Products Inc.*, No. 6:20-cv-00622-ADA (W.D. Tex., filed Sept. 9, 2020) (23.4 months from case filing to trial); *Ravgen, Inc. v. Lab. Corp. of Am. Holdings*, No. 6:20-cv-00969-ADA (W.D. Tex. filed Nov. 16, 2020) (23.1 months from case filing to trial).

*Conclusion.* The Federal Circuit has concluded that the speed of the transferee district should not alone outweigh all other factors. Thus, the Court finds that this factor weighs only slightly against transfer.

### b.   Local Interest

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in a patent case "are not a fiction." *In re Samsung*, 2 F.4th at 1380. "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). The Federal Circuit has accorded significant weight under this factor to the location where the accused product or functionality was "designed, developed, and tested." *In re Apple*, 979 F.3d at 1345. It has accorded no weight to the location of the sale of an accused product where that product is offered nationwide. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). Courts should not heavily weigh a party's general presence in the forum. *In re Apple*, 979 F.3d at 1345. For example, the Federal Circuit recently attributed error to this Court for granting even *some* weight to Apple's significant general presence in this District. *In re Apple Inc.*, No. 2022-137, 2022 WL 1676400, at *2 (Fed. Cir. May 26, 2022) ("The court's reliance on [the defendant's Austin] offices, which lack such a connection to the locus of the events giving rise to the dispute, amounts to a clear abuse of discretion").

"Important considerations include the location of the injury, witnesses, and the [p]laintiff's residence." *Def. Distributed*, 30 F.4th at 435. Yet the Federal Circuit has instructed that plaintiff's residence in the transferor forum is owed no weight if it is "recent and ephemeral." *In re Juniper*

*Networks*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). The Federal Circuit has also clarified that a plaintiff's residence is owed zero weight if it lies beyond the transferor judicial district, even if just so. *See In re Apple*, 2022 WL 1676400, at *2 (granting little to no weight to the design, development, and testing of the claimed invention occurring just over 100 miles from the transferor court); *In re Google*, 2021 WL 4592280, at *6 (finding error with district court's reliance on plaintiff's office in Texas, where the office was located outside this District).

Because the manufacturing process technology for the accused Intel processors was designed and developed in Oregon and individuals with key knowledge regarding the accused technology live and work in that District, Intel argues that Oregon's local interest in this case is strong. ECF No. 60 at 13. Greenthread counters that the business dealings between Intel and Dell regarding the accused products are focused in this district, and that Intel's employees dedicated to the sale of products to Dell are mostly located in this District. ECF No. 83 at 13. The Court will again disregard the arguments regarding Dell in its partial transfer analysis.

Greenthread, though, argues that Intel maintains multiple offices in this district—at which it concedes that it designs and develops the ██████████████ and that the design and development of an accused product in this District qualifies as one of the "events that gave rise to a suit." *Id.* (citing *In re Apple Inc.*, 979 F.3d at 1345)). The Court agrees with Intel, though, that the accused dopant profiles undisputedly were developed in Oregon and in California. ECF No. 91 at 5; ECF No. 38 ¶ 52. Thus, it accords significant weight to Oregon as the place where the accused functionality was "designed, developed, and tested." *In re Apple*, 979 F.3d at 1345.

*Conclusion.* Accordingly, this factor weighs in favor of transfer.

c. <u>Familiarity of the Forum with Law-at-Issue</u>

The Court finds, and the parties do not contest, that this Court and the District of Oregon are both familiar with patent law. ECF No. 60 at 14; ECF No. 83 at 12 n.5. Thus, this factor is neutral.

d. <u>Conflict of Laws</u>

The Court finds, and both parties agree, that this factor is neutral. ECF No. 60 at 14; ECF No. 83 at 12 n.5. To the extent any conflicts of law arise, both courts are equally capable of addressing them.

**4. Conclusion**

Having considered the private and public interest factors, the Court's conclusions for each factor is summarized in the following table:

| Factor | The Court's Finding |
| --- | --- |
| Cost of attendance for willing witnesses | Weighs in favor of transfer |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| Relative ease of access to sources of proof | Weighs in favor of transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Weighs slightly against transfer |
| Administrative difficulties flowing from court congestion | Weighs slightly against transfer |
| Local interest | Weighs in favor of transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

The Court gives the "practical problems" factor less weight because the Federal Circuit has held that judicial economic considerations cannot "negate[] the significance of having trial close to where most of the identified witnesses reside and where the other convenience factors clearly favor. *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010). And the Federal Circuit has consistently told the Court to diminish the weight given to the docket-congestion factor. Intel has more sources of proof and willing witnesses in the Oregon area. Oregon likely has a stronger

localized interest because of Intel's significant development, design, and testing there. The judicial economy considerations of having all claims determined in a single lawsuit does not outweigh the benefits of partial transfer, especially considering that claims asserted against Dell unrelated to the Intel Accused Products have nothing to do with Intel. Thus, Intel shows that Oregon is a clearly more convenient venue.

## I.   CONCLUSION

Given that Oregon is a clearly more convenient venue for Greenthread's claims against Intel, and that Greenthread's remaining claims against Dell unrelated to the Intel Accused Products have nothing to do with Intel, the Court finds that the comparative inconvenience of splitting the suit does not outweigh the advantages to be gained from a partial transfer. *See In re: AMAZON.COM, INC.*, 2022 WL 17688072, at *3. Were it otherwise, Intel would be made to litigate in a comparatively less convenient forum based on claims asserted against another defendant that are entirely distinct from Intel. Thus, the Court finds that severance and transfer of Greenthread's claims against Intel and stay of Greenthread's claims against Dell based on the Accused Intel Products are warranted here with the understanding that Dell will be bound by the outcome of the litigation regarding the Accused Intel Products.

**IT IS THEREFORE ORDERED** that Defendant Intel's Motion to Sever Plaintiff's Claims against Intel, Transfer Venue of Those Claims to Oregon, and Stay Claims Against Dell Based on Accused Intel Products (ECF No. 60) is **GRANTED**. Greenthread's claims against Intel are severed from the case, and the Court's Clerk is directed to transfer those claims to the U.S. District Court for the District of Oregon. The causes of action asserted by Greenthread against Dell based on the Accused Intel Products are hereby stayed.

**SIGNED** this 21st day of December, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE